**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000420
14-JAN-2019
07:51 AM**

NO. CAAP-17-0000420

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
BRYAN MEYER, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-16-03836)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Leonard and Reifurth, JJ.)

Defendant-Appellant Bryan Meyer appeals from the
March 16, 2017 Notice of Entry of Judgment and/or Order and
Plea/Judgment, and the April 17, 2017 Notice of Entry of Judgment
and/or Order and Plea/Judgment, entered by the District Court of
the First Circuit, Honolulu Division ("District Court").[1]  The
District Court convicted Meyer of one count of operating a
vehicle while under the influence of an intoxicant ("OVUII"), in
violation of Hawaii Revised Statutes ("HRS") section 291E-
61(a)(1).[2]

On appeal, Meyer argues that the District Court wrongly
convicted him where (1) Plaintiff-Appellee State of Hawai'i
failed to prove he knowingly and voluntarily consented to

---

[1]    The Honorable James H. Ashford presided.

[2]    HRS section 291E-61(a)(1) (Supp. 2015) provides that "[a] person
commits the offense of operating a vehicle under the influence of an
intoxicant if the person operates or assumes actual physical control of a
vehicle . . . [w]hile under the influence of alcohol in an amount sufficient
to impair the person's normal mental faculties or ability to care for the
person and guard against casualty[.]"

participate in the Field Sobriety Tests ("FST"); (2) "[t]here was no proper colloquy as to the limitation of cross examination," according to the parties' stipulation ("Stipulation"); (3) "the trial court applied the [S]tipulation more broadly than the parties' agreement"; (4) the court erroneously admitted statements Meyer made during a custodial interrogation, where he was not given a *Miranda* advisement; (5) the State interfered with Meyer's right to present exculpatory evidence; (6) the District Court clearly erred by finding that Meyer, as a former law enforcement officer who had testified in court, should have paid more attention to Officer Cullen's FST instructions; and (7) the District Court assumed the role of an advocate on behalf of the State.

As Meyer concedes in his arguments, he failed to raise his points of error below; therefore, they are waived. *See* Haw. R. App. P. 28(b)(4) and (7), and Haw. R. Pen. P. 12(f). Nevertheless, because the issues implicate Meyer's constitutional rights, we review them for plain error. *See State v. Murray*, 116 Hawai'i 3, 13, 169 P.3d 955, 965 (2007).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Meyer's points of error as follows and affirm without prejudice to any subsequent petition under Hawaii Rules of Penal Procedure, Rule 40, to the District Court addressing the ineffective assistance of counsel claim raised herein.

Meyer argues that the District Court plainly erred by admitting Honolulu Police Department ("HPD") Officer Lordy Cullen's testimony regarding Meyer's performance on the FST where the administration of the FST constituted a "search and seizure" and Plaintiff-Appellee State of Hawai'i failed to obtain a warrant or obtain Meyer's knowing and voluntary consent to perform the FST.

The State, however, was not required to obtain Meyer's consent or a warrant before conducting the FST because there was reasonable suspicion to justify the procedure as part of an

investigative stop. *See State v. Wyatt*, 67 Haw. 293, 301-06, 687 P.2d 544, 550-53 (1984). HPD Officer Russell Maeshiro and Officer Cullen had reasonable suspicion to believe that Meyer was committing OVUII where Officer Maeshiro saw Meyer's vehicle "veer[] to the left crossing over . . . the broken white lines about a foot for about three seconds and he jerked back into . . . the lane. And then he repeated the same motion, went to the left about a foot for about three seconds then jerked back to his lane." Meyer then crossed over into a "gore area," or triangular space where the freeway splits in two directions, then cut back into the lane. Furthermore, Officer Maeshiro noticed that Meyer's face appeared flushed, while both officers noted that Meyer smelled of alcohol and his eyes were bloodshot, red, and glassy.

Meyer argues that the District Court applied the Stipulation regarding Officer Cullen's testimony too broadly. We disagree. At trial, the State and Meyer stipulated that, among other things, Officer Cullen would be "testifying only as a lay witness, not as an expert. He won't be giving any testimony as to any scientific clues. He won't be drawing any legal conclusions which in this case means whether [Meyer] passed or failed any portions of the three-part test."

After testifying, in part, about Meyer's failure to perform the FST as instructed, Officer Cullen testified that based on his observations, he believed that Meyer's performance on the FST was poor and that Meyer was unable to operate a motor vehicle safely. On cross-examination of Officer Cullen by defense counsel, the following transpired:

> Q . . . And you had mentioned a one-inch circular sway on the [Horizontal Gaze Nystagmus test] as [Meyer] was standing. Per [the National Highway Traffic Safety Administration ("NHTSA")], is there an amount of sway that's permissible?
>
> A It's an observation.
>
> Q Observation. Okay.
>
> And but is there an amount that they say is a permissible amount?
>
> A No.
>
> [PROSECUTOR]: Your Honor, asked and answered.

Move to strike.

> THE COURT: Okay. The --candidly the problem I have is we had a stipulation that addressed this. So if the parties are going to amend their stipulation or waive portions of it, that's fine, but I think this, one, calls for hearsay; and, two, the only people who can get hearsay into the record are experts."

Meyer argues that the District Court erroneously prevented him from cross-examining Officer Cullen about whether NHTSA considers specific types or degrees of mistakes on the FST to be indicative of impairment because the parties did not stipulate as to the meaning of the officer's observation that Meyer made mistakes on the FST. Further, as part of his argument that the District Court exhibited bias against him, Meyer contends the District Court erroneously limited the cross-examination where the prosecution had not objected on the ground that it violated the Stipulation.

Although Meyer maintains cross-examination on this point was aimed at exposing the meaning of Officer Cullen's observation that Meyer made mistakes on the FST, it appears it actually was designed to call into question the basis for the officer's opinion that Meyer performed poorly on the FST and, therefore, was unable to safely operate his vehicle. The parties stipulated that Officer Cullen would testify only as a lay person. Testimony regarding how NHTSA interprets mistakes on the FST, and/or whether the officer's opinion comported with NHTSA's interpretation, is not lay testimony. *See* Haw. R. Evid. 701; *State v. Nishi*, 9 Haw. App. 516, 521-22, 852 P.2d 476, 479 (1993). Further, such testimony would have been hearsay with no applicable exception. *See* Haw. R. Evid. 801-806.

Due to the Stipulation, there was no direct testimony regarding NHTSA standards. Therefore, it would have been inappropriate to allow cross-examination on NHTSA standards under Hawaii Rules of Evidence Rule 611(b). Furthermore, as this was a bench trial and we ordinarily presume that the trial court will consider only admissible evidence, it was prudent for the District Court to make explicit what evidence it was thinking about excluding, e.g., hearsay testimony, in light of the Stipulation. Therefore, the District Court did not plainly err

4

by limiting the cross-examination in accordance with the Stipulation and the court's own sound discretion to limit cross-examination. *See* Haw. R. Evid. 611(a); *State v. Jackson*, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996).

Meyer argues that the District Court provided him with an insufficient colloquy on the Stipulation by failing to advise him that his "ability to cross-examine a witness as to the meaning of the witness's dispositive observations" was limited. "Waiver of a defendant's fundamental rights must be knowing and voluntary, and must come directly from the defendant." *Murray*, 116 Hawai'i at 10, 169 P.3d at 962. Before obtaining Officer Cullen's testimony regarding the administration of the FST, the prosecution presented the Stipulation, followed by the colloquy between the court and Meyer:

> Q [by the Prosecutor]  And once the defendant got out of his vehicle did you take him to another location?
>
> A       I asked or I instructed the defendant to walk towards the rear of his vehicle, yes.
>
> Q       And regarding that area, how was the lighting condition?
>
> A       Over headlighting, [sic] street lamps, um, bright.  Officer Maeshiro's headlights were also activated as well as my police flashlight.
>
> Q       Was there any slope on the ground?
>
> A       No.
>
> Q       Any debris?
>
> A       No.
>
> Q       And, Officer Cullen, were you trained to administer as well as evaluate the standardized field sobriety test?
>
> A       Yes, I was.
>
> [PROSECUTOR]:  Your Honor, at this time State is offering defense the stipulation as to Officer Cullen's training, experience, qualification in administering as well as evaluating the standardized field sobriety test in accordance with the National Highway Traffic Safety Administration standards as well as the internal Honolulu Police Department standards.
>
> As part of the stipulation State won't be eliciting any testimony as to any movements of the eyes that Officer Cullen might have observed from the defendant during the horizontal gaze nystagmus portion of the test.  He will be testifying only as a lay witness, not as an expert.  He won't be giving any testimony as to any scientific clues. He won't be drawing any legal conclusions which in this case

means whether defendant passed or failed any portions of the three-part test.

> THE COURT: Is that acceptable to defense?
>
> [Meyer's Counsel]: That is, Your Honor.
>
> THE COURT: Okay. Mr Meyer, did you understand all that?
>
> [Meyer]: Yes.
>
> THE COURT: Okay. Do you agree to all that?
>
> [Meyer]: Yes, Your Honor.
>
> THE COURT: Any questions at all?
>
> [Meyer]: No, sir.
>
> THE COURT: Okay. Thank you very much.
>
> So stipulated.

*Murray* requires a colloquy with the defendant before a waiver of his right to put the State to its burden of proof as to the elements of the offense. Here, the Stipulation was not as to any of the elements, but as to the foundation of the officer's lay testimony. Therefore, *Murray* does not apply. Meyer provides no authority to support his claim that the colloquy was deficient, and we find none.

Meyer argues that the District Court plainly erred by admitting into evidence his answers to questions related to sickness, injuries, medical conditions, or whether Meyer was taking any medication ("medical rule-out questions"), and Meyer's statement that he understood the FST instructions, which he provided during a custodial interrogation after being given no advisement of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). As discussed, Officer Cullen had reasonable suspicion that Meyer was OVUII based on Officer Maeshiro's observations of Meyer's vehicle prior to the traffic stop and both officers' observations of Meyer's appearance and odor of alcohol during the stop. Officer Cullen's subsequent questions regarding Meyer's medical condition and whether he understood the FST instructions were "designed to confirm or dispel the officer's reasonable suspicion." *State v. Ah Loo*, 94 Hawai'i 207, 211, 10 P.3d 728, 732 (2000).

6

The evidence shows that Officer Cullen asked Meyer the medical rule-out questions and whether Meyer understood the FST instructions in a noncoercive manner, at the scene, in a public place, immediately after developing a reasonable suspicion that Meyer was OVUII. *See State v. Ketchum*, 97 Hawai‘i 107, 127, 34 P.3d 1006, 1026 (2001). Under the totality of the circumstances, Meyer was not in custody for *Miranda* purposes when he made the subject statements.

Meyer argues that the District Court plainly erred and violated his right to due process by "put[ting] no stock or emphasis on" his testimony that Officer Cullen erroneously advised him to not take a blood or breath test. Meyer asserts that the officer's advice interfered with his ability to present a complete and meaningful defense, in violation of his right to due process, because the test result would have been exculpatory.

Meyer presents no authority to support these points, and we find none. He does not maintain, and the evidence does not show, that his refusal to take the blood alcohol test was involuntary or unintelligent. Although Meyer now asserts that Officer Cullen advised him to refuse, Meyer testified that the officer merely commented that he would not take the test if he were in Meyer's place. Further, Meyer has presented no evidence showing that the evidence would have been exculpatory. It was within the District Court's discretion to accord the evidence no weight. *See State v. Mitchell*, 94 Hawai‘i 388, 393, 15 P.3d 314, 319 (App. 2000).

Meyer argues that the District Court plainly erred by finding that Meyer, more than other OVUII defendants, should have paid closer attention to Officer Cullen's instructions on how to perform the FST because Meyer had been a law-enforcement officer and had testified in court numerous times.[3/] Meyer notes that he

---

[3/] The District Court explained that:

> My concern with Mr. Meyer's testimony on these issues is this. Uh, the defendant was a law enforcement officer for basically a long and probably very excellent career. He's also testified over 20 times. I take that to mean 20 times testifying in court under oath.

(continued...)

testified in this case that he had neither participated in an FST prior to the incident nor conducted one as an officer.

The District Court's explanation does not contradict Meyer's testimony as to his lack of experience performing and conducting the FST, and appears to be based on a rational inference. "[A]s trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence . . . ." *State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (quoting *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)). Furthermore, insofar as the finding reflects doubt as to Meyer's credibility regarding not paying attention to the FST demonstration in light of his substantial experience in law enforcement and as a witness in court, such a determination is the province of the trial court. Ultimately, Meyer demonstrates no connection between the court's comments and any legal conclusions reached and any error by the District Court was harmless because, even omitting the contested findings, there was sufficient evidence to support the conviction.

Meyer argues that the District Court "abandoned its role as an impartial arbiter" and exhibited bias against him, as shown by various allegedly improper or erroneous actions by the court. In addition to the aforementioned points of error, Meyer cites to other allegedly erroneous rulings by the District Court as evidence of the court's bias against him. The Hawai'i Supreme Court, however, has "long adhered to the general rule that, standing alone, mere erroneous or adverse rulings by the trial judge do not spell bias or prejudice." *State v. Yip*, 92 Hawai'i

---

3/ (...continued)
As a law enforcement officer who has testified in court, I think Mr. Meyer more than an awful lot of people really should know that details matter and to pay attention to instructions and yet Mr. Meyer when testifying did not -- admitted to not really paying a whole lot of attention to the officer's instructions. He didn't look in the demo whether the officer was matching heel to toe for example.

. . . .

. . . I guess my characterization of this is at best for Mr. Meyer he failed to pay close attention to Officer Cullen's instruction and demonstration which I do find to be stunning for a law enforcement officer who candidly ought to know better.

98, 106, 987 P.2d 996, 1004 (App. 1999) (internal quotation marks and brackets omitted) (quoting *Aga v. Hundahl*, 78 Hawaiʻi 230, 242, 891 P.2d 1022, 1034 (1995)); *see also In re Moore*, 488 B.R. 120, 129 (D. Haw. 2013). Regardless, the additional rulings that Meyer contests are not erroneous.

Meyer argues that the District Court exhibited bias by erroneously interjecting that Meyer's counsel's questions on direct examination were leading, where the prosecution had not objected. We disagree that this was error. As discussed, the District Court has broad discretion to control the interrogation of witnesses. *See* Haw. R. Evid. 611(a); *Jackson*, 81 Hawaiʻi at 47, 912 P.2d at 79. "Leading questions should not be used on the direct examination of a witness. . . ." Haw. R. Evid. 611(c). Meyer does not dispute that the questions were leading.

Meyer argues that the District Court exhibited bias by erroneously finding that he failed to address two of the three purported instances of "meandering" outside his lane while driving, after the District Court limited the prosecutor's cross-examination on this point. We disagree. On direct, Meyer testified the reason he swerved while driving was because he spilled some french fries and became distracted. On cross-examination, the State engaged Meyer in repetitive questions on this point that did not serve to clarify or dispel Meyer's purported reason for swerving. *See* Haw. R. Evid. 611(a); *State v. Faulkner*, 1 Haw. App. 651, 655, 624 P.2d 940, 944 (1981). The District Court did not err by preventing the prosecutor from continuing the line of questioning, and Meyer presented no other cause of his meandering in his testimony.

Meyer also argues that the District Court exhibited bias against him by finding that he was "dumb enough" to drive while fatigued and fighting a cold and after he had consumed alcohol. However, Meyer has failed to show that the comment, in isolation or in combination with the other alleged instances of bias, revealed a deep-seated favoritism toward the State or antagonism toward him, particularly since the district court immediately rephrased its finding by stating, "[P]oor judgment enough might be the more polite phrase. . . ." *See Liteky v.*

*United States*, 510 U.S. 540, 555 (1994). In sum, Meyer has failed to show any bias by the District Court that resulted in an unfair trial that violated his right to due process. *See Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010); *cf. State v. Yoshino*, 50 Haw. 287, 290, 439 P.2d 666, 669 (1968).

Therefore, IT IS HEREBY ORDERED that the March 16, 2017 Notice of Entry of Judgment and/or Order and Plea/Judgment, and the April 17, 2017 Notice of Entry of Judgment and/or Order and Plea/Judgment, entered by the District Court of the First Circuit, Honolulu Division, are affirmed without prejudice to any subsequent petition under Hawaii Rules of Penal Procedure, Rule 40, to the District Court addressing the ineffective assistance of counsel claim raised herein.

DATED: Honolulu, Hawaiʻi, January 14, 2019.

On the briefs:

Richard L. Holcomb
(Holcomb Law, LLLC)
for Defendant-Appellant.

Donn Fudo,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge